# 2008 DTA 88

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE CAROLINA**
**PANEL ESPECIAL**

MUNICIPIO AUTÓNOMO DE CAROLINA
Demandante

v.

HR PROPERTIES, INC., *ET AL*
Demandados

---

COMITÉ DE VECINOS DE ISLA VERDE, *ET AL*
Demandantes

v.

HR PROPERTIES, INC., *ET AL*
Demandados

---

COMPAÑÍA DE PARQUES NACIONALES
Demandante

v.

HR PROPERTIES, INC., *ET AL*
Recurridos

v.

BANCO GUBERNAMENTAL DE FOMENTO PARA PUERTO RICO
Tercero Demandado

CITIBANK, N.A., *ET AL*
Peticionarios

Núm. KLCE-08-00338

San Juan, Puerto Rico, a 25 de junio de 2008

Panel integrado por su Presidente, el Juez Rivera Martínez,
el Juez Colón Birriel y la Juez Pesante Martínez

Rivera Martínez, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCIÓN

Citibank N.A. (en adelante Citibank) nos solicita que revisemos la resolución emitida el 18 de enero de 2008, notificada el 12 de febrero de 2008, por el Tribunal de Primera Instancia, Sala de Carolina (en adelante TPI). [1] Mediante la misma se declaró no ha lugar su solicitud de desestimación de la demanda presentada por HR Properties, Inc. y CH Properties, Inc.

Examinado el recurso, así como el derecho aplicable, procedemos a denegar la expedición del auto solicitado.

### I

El 11 de marzo de 1996, la Compañía de Fomento Recreativo (ahora Compañía de Parques Nacionales) y el Municipio de Carolina (en adelante Municipio) suscribieron un contrato de arrendamiento con Desarrollos Hoteleros de Carolina, Inc. (en adelante Desarrollos Hoteleros) en el cual esta última arrendó un predio de

terreno de cinco cuerdas del Balneario de Carolina. Dicho arrendamiento fue pactado por 50 años, renovables a un total de 99 años. Mediante este acuerdo se permitió la constitución de gravámenes sobre el contrato, pero no sobre el terreno.

Posteriormente, Sunshine Isle, LLC (en adelante Sunshine) adquirió de Desarrollos Hoteleros todo título, derechos y privilegios que ésta había adquirido al suscribir el referido contrato de arrendamiento sobre el predio de cinco cuerdas. Sunshine es una compañía de responsabilidad limitada cuyos socios son Citibank y el Banco Gubernamental de Fomento (en adelante Banco Gubernamental).

El 5 de agosto de 2002, Sunshine le vendió y traspasó a HR Properties, Inc. (en adelante HR) los derechos de arrendamiento que tenía sobre el predio de cinco cuerdas bajo los términos y condiciones del contrato de arrendamiento. A su vez, HR le cedió a CH Properties, Inc. (en adelante CH) los derechos de arrendamiento sobre el referido terreno bajo los términos y condiciones del contrato de arrendamiento.

Así cosas, el 1 de abril de 2005, el Municipio (en adelante Municipio) presentó ante el TPI una demanda sobre sentencia declaratoria, *mandamus* e *injunction* preliminar contra HR y varias agencias gubernamentales (caso FPE2005-0226). Sostuvo, en síntesis, que dicha corporación presentó una consulta de ubicación ante la Junta de Planificación para desarrollar un proyecto residencial-turístico en un predio de cinco cuerdas adyacente al balneario de Isla Verde de Carolina (consulta 2002-20-0382-JPU). Alegó que como parte del procedimiento de consideración de dicha consulta, y como requisito necesario para su aprobación, se tenía que preparar y presentar una declaración escrita y detallada sobre el impacto ambiental de la acción (en adelante DIA), según lo requiere el Artículo 4(c) de la Ley Sobre Política Pública Ambiental, 12 L.P.R.A. sec. 1124. Señaló que en vez de dicho documento, la referida corporación sometió ante la Junta de Planificación una Evaluación Ambiental (en adelante EA), otro tipo de documento ambiental de menor rigurosidad que una DIA.

Por otra parte, el Municipio alegó que posterior a la aprobación de la consulta antes mencionada, HR presentó otra solicitud de anteproyecto de construcción para ciertas obras de ampliación del Hotel Mariott Courtyard. Adujo que la ampliación se llevaría a cabo dentro de los terrenos del hotel existente, los cuales colindaban con el predio de cinco cuerdas donde se proponía la construcción del condo-hotel. Indicó que parte de las referidas obras estaban diseñadas para conectar las facilidades el hotel Mariot Courtyard con las del condo-hotel propuesto. Señaló que como parte de la consideración y aprobación de ese anteproyecto, HR preparó y sometió una EA puntualizada a las implicaciones ambientales de las obras de ampliación propuestas. Además, el Municipio sostuvo que HR violó la Ley Sobre Política Pública Ambiental y el Reglamento Para el Proceso de Presentación, Evaluación y Trámite de Documentos Ambientales de la Junta de Calidad Ambiental de 29 de octubre de 1999, al fragmentar indebidamente los proyectos antes mencionados.

En lo pertinente, el Municipio sostuvo que el documento ambiental que se debió haber preparado y requerido por las correspondientes agencias gubernamentales para evaluar las referidas consultas era una DIA en lugar de una EA. En vista de ello, solicitó se emitiera una sentencia declaratoria mediante la cual se declarara nula e ilegal la certificación de cumplimiento ambiental en la cual se basó la consulta de ubicación aprobada por la Junta de Planificación. Además, solicitó se le ordenara a dicha agencia, así como a la Junta de Calidad Ambiental que a tenor de sus obligaciones bajo la Ley Sobre Política Pública Ambiental, requiriera que el cumplimiento con el Artículo 4(c) de dicha ley se realizara mediante el mecanismo de una DIA.

Por otra parte, el Comité de Vecinos de Isla Verde, Amigos del Mar, Inc. y Guardaguas de Puerto Rico (en adelante Comité) presentaron ante el TPI una demanda sobre interdicto preliminar contra HR y otros (caso FPE2005-0268). Entre otras cosas, sostuvieron que el contrato de arrendamiento suscrito el 11 de marzo de 1996 por la Compañía de Fomento Recreativo, el Municipio y Desarrollos Hoteleros era nulo, toda vez que constituyó una enajenación de un bien de uso público al otorgarse un arrendamiento por 99 años. Asimismo, adujeron que las agencias otorgantes no tenían facultad para enajenar por un término de 99 años terrenos de

propiedad pública. Además, alegaron que se incumplió con el Artículo 4(c) de la Ley Sobre Política Pública Ambiental, *supra*, al otorgarse el referido contrato sin haberse llevado a cabo un análisis del impacto ambiental de contratar sobre un bien de uso público. En vista de lo anterior, el Comité solicitó se declarara nulo e inválido el contrato otorgado entre la Compañía de Fomento y Desarrollos Hoteleros en 1996, así como cualquier otro contrato o cesión de derecho fundamentada en dicho contrato.

Asimismo, la Compañía de Parques Nacionales (en adelante Parques) presentó una demanda contra HR, el Municipio, Desarrollos Hoteleros y Sunshine, entre otros. (caso FAC05-0513). Solicitó que se declarara nulo el contrato de arrendamiento del predio de cinco cuerdas, por éste alegadamente constituir una enajenación *de facto* de un bien de aprovechamiento común inalienable. Además, solicitó que se le devolviera la titularidad de dicho terreno.

Luego de numerosos trámites procesales, incluyendo la consolidación de los casos, HR y CH presentaron un escrito titulado *Reconvenciones, Demandas de Coparte y Demandas de Tercero* en el que incluyeron, en lo pertinente, una demanda de tercero contra Citibank y el Banco Gubernamental. Señalaron que ambas entidades eran miembros de Sunshine, la sociedad especial de la cual adquirieron el contrato de arrendamiento del predio de cinco cuerdas. Adujeron que en todo momento material a los hechos del caso los socios individuales de Sunshine, a saber, el Banco Gubernamental y Citibank, le hicieron representaciones de que el aludido contrato era válido y que no había impedimento legal alguno para adquirir o asumir el mismo. Además, alegaron que Citibank y el Banco Gubernamental se obligaron al saneamiento por evicción a su favor, en la eventualidad de que fueran despojadas de su título.

HR y CH sostuvieron que en la eventualidad de que se declarasen con lugar las demandas presentadas en su contra y en consecuencia, se determinara que el contrato de arrendamiento sobre el predio de cinco cuerdas es nulo, Citibank y el Banco Gubernamental les responderían por el saneamiento por evicción, hasta el monto de sus aportaciones de capital, de surgir que Sunshine fue disuelta o no tiene fondos para cubrir la sentencia.

Por su parte, Citibank solicitó la desestimación de la demanda contra tercero a tenor de lo dispuesto en la Regla 10.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 10.2. Sostuvo que la demanda no exponía una reclamación que justificara la concesión de un remedio. Adujo que Sunshine, compañía de la cual es miembro, es una compañía de responsabilidad limitada y como tal les ofrece a sus miembros dicha protección. Esto, debido a que las compañías de responsabilidad limitada son entidades separadas de sus miembros, por lo que Citibank, como miembro de Sunshine, no responde por sus obligaciones, responsabilidades o deudas.

Asimismo, Citibank sostuvo que procedía la desestimación de la demanda de tercero, ya que la misma no presenta una controversia justiciable, toda vez que la misma no está madura. Arguyó que la demanda estaba basada en supuestos y hechos hipotéticos y especulativos. Citibank alegó que fue traída como demandada por el mero hecho de ser miembro de Sunshine, en caso de que se anule el contrato de arrendamiento del predio de las cinco cuerdas y que luego recaiga una sentencia contra Sunshine, la cual ésta no pueda satisfacer.

Así las cosas, el 18 de enero de 2008, el TPI declaró no ha lugar *"por el momento"* la solicitud de desestimación presentada por Citibank. Inconforme, éste presentó el recurso que nos ocupa. Sostiene que erró el TPI al no desestimar la demanda de tercero cuando de la misma no surge una causa de acción válida de HR y CH en su contra, y a pesar de que, aun si existiese una reclamación válida, la controversia es prematura.

## II

La Regla 10.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 10.2, permite al demandado solicitar que se desestime la demanda en su contra cuando, entre otras razones, ésta *"no expone una reclamación que justifique la concesión de un remedio"*. A los fines de disponer de una moción de desestimación, el tribunal está obligado a dar por ciertas y buenas todas las alegaciones fácticas de la demanda radicada y que hayan sido

aseveradas de manera clara. *Roldán Rosario y otros v. Lutrón, S. M., Inc.*, 151 D.P.R. 883, 891 (2000); *Harguindey Ferrer v. Universidad Interamericana*, 148 D.P.R. 12, 30 (1999).

El promovente de la moción de desestimación tiene que demostrar que, presumiendo que lo allí expuesto es cierto, la demanda no expone una reclamación que justifique la concesión de un remedio. *Pressure Vessels v. Empire Gas*, 137 D.P.R. 497, 505 (1994). Esta doctrina se aplica solamente a hechos bien alegados y expresados de manera clara y concluyente, que de su faz no den margen a dudas. *Colón Muñoz v. Lotería de Puerto Rico*, 167 D.P.R. ____ (2006), **2006 J.T.S. 74**; *Sánchez v. Autoridad de los Puertos*, 153 D.P.R. 559, 569 (2001); *Pressure Vessels v. Empire Gas*, *supra*, a la pág. 505. Ante una moción de desestimación, las alegaciones hechas en la demanda hay que interpretarlas conjuntamente, liberalmente y de la manera más favorable posible para la parte demandante. *Dorante v. Wrangler*, 145 D.P.R. 408, 414 (1998). La demanda no deberá ser desestimada a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo a su reclamación. *Pressure Vessels v. Empire Gas*, *supra*, a la pág. 505.

La Regla 10.2 de las de Procedimiento Civil, *supra*, también dispone que si en una moción de desestimación en la cual se formula la defensa de dejar de exponer una reclamación que justifique la concesión de un remedio, se exponen materias no contenidas en la alegación impugnada, y el tribunal no excluye las mismas, la moción debe considerarse como una moción de sentencia sumaria. Si esto sucede, la regla establece que la moción estará sujeta los trámites ulteriores provistos en la Regla 36 de las de Procedimiento Civil, 32 L. P.R.A. Ap. III, R. 36, que dispone lo relativo a la sentencia dictada sumariamente.

De otra parte, la sentencia sumaria es un mecanismo extraordinario y discrecional que procede cuando la parte promovente le demuestra al tribunal que el juicio en su fondo es innecesario. *Freire Ayala v. Vista Rent To Own, Inc.*, 169 D.P.R. ___, **2006 J.T.S. 172**. El propósito cardinal de esta regla es promover una solución justa, rápida y económica de la litigación cuando no exista una genuina controversia de hechos. *E.L.A. v. Cole Vázquez*, 164 D.P.R. ___, **2005 J.T.S. 55**. Se podrá dictar sentencia sumaria si de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, surge que no hay controversia real sustancial en cuanto a ningún hecho material y como cuestión de derecho debe dictarse sentencia a favor de la parte promovente. Regla 36.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.3. Por lo tanto, se concederá cuando la evidencia que se presente con la moción establezca con claridad la existencia de un derecho.

El tribunal, al considerar una moción de sentencia sumaria: (1) analizará tanto los documentos que acompañen la moción en solicitud de la sentencia sumaria, como los documentos incluidos en la oposición y aquellos documentos que obren en el expediente del tribunal; (2) analizará los hechos de la forma más favorable para la parte que se opone; (3) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos; (4) presumirá ciertos los hechos no controvertidos; (5) hará un concienzudo examen de la situación de hechos para quedar convencido, hasta donde sea posible, de que tiene ante sí toda la verdad sobre los hechos; y (6) emitirá sentencia según proceda en derecho. *Col. Ing. Agrim. P.R. v. A.A.A.*, 131 D.P.R. 735, 781 (1992).

Sin embargo, los tribunales no deberán utilizar el mecanismo procesal de sentencia sumaria en los siguientes casos: (1) cuando se trate de un caso complejo; (2) cuando esté envuelto el interés público; (3) cuando haya elementos subjetivos, de intención, o negligencia; o (4) cuando el factor credibilidad sea esencial. *Jusino et als. v. Walgreens*, 155 D.P.R. 560, 579 (2001) Por su propia naturaleza, ciertas controversias no son aconsejables resolverlas mediante sentencia sumaria debido a que, difícilmente, pueda reunirse ante el tribunal toda la verdad de los hechos a través de declaraciones juradas o deposiciones. En dichos casos, la credibilidad juega un papel esencial y para llegar a la verdad el litigante depende en gran parte de lo que extraiga del contrario durante el juicio. *Soto v. Hotel Caribe Hilton*, 137 D.P.R. 294, 301 (1994).

Al determinar si la Regla 36 de Procedimiento Civil, *supra*, es el vehículo apropiado para disponer total o parcialmente de una demanda, el Tribunal Supremo ha expresado que el principio rector debe ser el sabio discernimiento, porque dicho recurso mal utilizado puede prestarse para despojar a un litigante de su día en corte, principio elemental del debido proceso de ley. *Roig Com. Bank v. Rosario Cirino,* 126 D.P.R. 613, 617-618 (1990). *"El objetivo de aligerar la tramitación de un caso no puede derrotar el principio fundamental de todo proceso ante un tribunal: alcanzar una solución justa."* PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 D.P.R. 881, 912 (1994).

Al emitir sentencia sumaria no se puede poner en peligro o lesionar los intereses de las partes. Por eso, si existe la más mínima duda en cuanto a cuáles son los hechos, la parte tiene derecho a un juicio plenario. *Roth v. Lugo,* 87 D.P.R. 386, 396-397 (1963). Cualquier duda sobre la existencia de una controversia de hechos *bona fide* debe ser resuelta contra la parte que solicita la sentencia sumaria.

Por otro lado, el auto de *certiorari* es un remedio procesal, utilizado para que un tribunal de mayor jerarquía pueda corregir un error cometido por un tribunal inferior. *Negrón v. Srio de Justicia,* 154 D.P.R. 79, 90-91 (2001). La expedición del mismo, como señala la ley, queda en la sana discreción del tribunal apelativo. *Id.*

La Regla 40 del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B, R. 40, establece los criterios que este tribunal deberá considerar a fin de determinar si procede la expedición de un auto de *certiorari.* La referida regla dispone que:

*"El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:*

*(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.*

*(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.*

*(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.*

*(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.*

*(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.*

*(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.*

*(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia."*

Por lo general, los tribunales revisores no intervienen con el manejo de los casos por el Tribunal de Primera Instancia ni con el ejercicio de la discreción de dicho foro, *"salvo que se demuestre que hubo un craso abuso de discreción o que el tribunal actuó con p[re]juicio y parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial"*. *Zorniak Air Services v. Cessna Aircraft Co.,* 132 D.P.R. 170 (1992). En cuanto al alcance de la discreción que ampara al Tribunal de Primera Instancia en la tramitación de los casos, también se ha reconocido bastante amplitud, más aún cuando se trata del manejo de casos complejos. *Vives Vázquez v. E.L.A.,* 142 D.P.R. 117, 141 (1996).

## III

En este caso, Citibank sostiene que el TPI erró al declarar no ha lugar *"por el momento"* su solicitud de desestimación de la demanda de tercero presentada en su contra por HR y CH. No obstante, la resolución emitida por el TPI claramente demuestra que luego de analizar el asunto ante su consideración y de dar por ciertas todas la alegaciones bien hechas de la demanda, no estaba del todo convencido respecto a que HR y CH no tuvieran una causa de acción válida en contra de Citibank.

El TPI, dentro del ejercicio de su discreción, decidió que este no es el momento para excluir a Citibank de la demanda. Señaló que en este caso es esencial dilucidar la validez del contrato de arrendamiento, así como sus repercusiones y para ello es necesario atender todos los planteamientos de todas las partes en cuanto a dicha controversia. El TPI expresó que dado el trasfondo de este caso, eliminar a Citibank en este momento podría alentar una multiplicidad de pleitos, ya que ésta podría responder y figurar como parte indispensable en las reclamaciones y de los eventos posteriores.

Dentro de su discreción y del marco de derecho vigente, el TPI determinó que en esa etapa de los procedimientos no procedía la solicitud de desestimación. No encontramos razón alguna para intervenir con la decisión tomada por el TPI. Debemos tener presente que los jueces de instancia están facultados de flexibilidad para lidiar con la tramitación de los asuntos judiciales. Si su actuación se funda en una base razonable que no resulta perjudicial a los derechos sustanciales de una parte, debe prevalecer su criterio.

Luego de examinar la resolución recurrida a la luz de lo antes discutido, entendemos que la determinación del TPI fue conforme a derecho, dentro de la discreción permitida en la tramitación de los asuntos judiciales. En conclusión, del análisis del recurso ante nos, y luego de ponderar los argumentos esgrimidos por Citibank, consideramos que la decisión emitida por el TPI es esencialmente correcta. Además, es menester señalar que en este caso no está presente ninguno de los criterios que establece la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, que muevan nuestro criterio para expedir el auto de *certiorari*.

Por los fundamentos antes expuestos, se deniega la expedición del auto solicitado.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones

### ESCOLIO 2008 DTA 88

**1.** En dicha ocasión, el TPI no fundamentó su determinación, por lo que el 28 de abril de 2008 emitimos resolución mediante la cual le ordenamos hacerlo. En cumplimiento con dicha orden, el 4 de junio de 2008, el TPI emitió resolución fundamentando su determinación de declarar no ha lugar la referida solicitud de desestimación.